IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 3:07cr256-MHT |
| | ) | |
| HOWARD JAMES SMITH | ) | |

BRIEF IN SUPPORT OF ADMISSION OF UNEXPLAINED WEALTH AND EXPERT TESTIMONY

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and submits this brief in support of evidence establishing unexplained wealth and expert testimony. As grounds, the United States sets forth the facts and law as follows:

FACTS

Howard James Smith was indicted on October 22, 2007, by a federal Grand Jury sitting in the Middle District of Alabama. Smith was charged with a single violation of Title 21, United States Code, Section 841, possession with intent to distribute controlled substances. Smith was arraigned on February 2, 2008. On February 12, 2008, Smith was detained pending trial by United States Magistrate Judge Terry F. Moorer. During this detention hearing, the United States learned that Smith has been receiving Title 16 Social Security benefits for alleged paranoid schizophrenia and mild retardation.[1] Due to Smith's alleged medical condition, he was later

[1]Both Smith and his wife receive Title 16 Social Security benefits. Smith's wife allegedly suffers from "multiple personality syndrome." According to the Social Security Administration, Title 16 benefits are similar to welfare benefits and impose a requirement that the recipient report any income to the Social Security Administration. Smith receives approximately $900.00 a

released and placed on home confinement. On March 14, 2008, a federal Grand Jury sitting in the Middle District of Alabama returned a five count indictment charging Smith and two co-defendants with conspiracy to distribute controlled substances and other violations of federal law.

During the course of its investigation, the United States discovered that Smith has been receiving Social Security benefits since 1992. The Social Security Administration confirmed that Smith has never reported, as required, any income from any source. Further investigation revealed that Smith currently owns a home (shared with his wife and two children) with an assessed value of $387,400.00 in Waugh, Alabama.[2] During the trial of this matter, the United States intends to offer the expert testimony of Mr. Roy Bradford. Mr. Bradford has 17 years experience with the Social Security Administration wherein he has become familiar with all Social Security programs. He currently serves as an Operations Supervisor, Office of Operations, Atlanta Region, Area I. He holds certifications from Auburn University, Webster University, Troy University, Harvard University, and Loyola University. Mr. Bradford will testify to his expertise with Social Security programs and the fact that Smith has never reported any income. Further, the United States intends to offer evidence from the Montgomery County Tax Assessor establishing the value of Smith's home at $387,400.00.

Simply stated, Smith is charged with conspiracy to distribute controlled substances.

---

month in benefits.

[2]Smith has provided the United States with approximately 50 receipts apparently seeking to establish legitimate payment for building supplies. The government does not question Smith's payment for building supplies. Rather, the government alleges that expenses for building the home far exceed any legitimate funds Smith possessed. Smith's receipts total approximately $103,572. Yet, Smith's receipts fail to account for the assessed value of his assets. The United States has attached a summary of Smith's evidence - see "Attachment A." A photo of Smith's home is - "Attachment B."

Smith has never reported any income to the Social Security Administration, nor has he reported any wages to the State of Alabama. Nevertheless, Smith owns a $387,400.00 home with his wife and two children. Despite Smith's alleged receipt of $151,300.00 in insurance proceeds, his unexplained wealth is highly probative of drug trafficking.

Currently, Smith objects to the government's intention to offer expert testimony and evidence of unexplained wealth. For the following reasons, Smith's objections are due to be overruled.

## ANALYSIS

### I. EXPERT TESTIMONY

Pursuant to Rule 702, Federal Rules of Evidence, if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. See Fed. R. Evid. 702.

In the instant case, the United States intends to offer the expert testimony of Mr. Roy Bradford for the limited purpose of establishing that Smith has been receiving Title 16 Social Security benefits since 1992. Mr. Bradford will explain Title 16 benefits and any legal obligations upon the recipient to report sources of income. Mr. Bradford will authenticate and explain Social Security records establishing Smith's receipt of benefits and his failure to report any legitimate sources of income. This testimony does not amount to "scientific knowledge." Rather, it will merely assist the trier of fact in determining if Smith has participated in a conspiracy to distribute controlled substances. Smith claims he is a victim of mistaken identity and has never distributed controlled substances. Therefore, evidence of unexplained wealth is

highly probative of the crimes charged.

Smith seeks to exclude this expert testimony based upon Rule 403, Federal Rules of Evidence. However, relevant evidence may be excluded under Rule 403 only when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. Rule 403 is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence. See United States V. Ross, 33 F.3d 1507 (11th Cir. 1994).

Despite Smith's objection, Rule 403 has failed to exclude evidence far more serious than explaining Social Security benefits. For example, Rule 403 has not barred evidence of murder ((see United States v. Finestone, 816 F.2d 583 (11th Cir. 1987) and United States v. Meester, 762 F.2d 867 (11th Cir. 1985)); or evidence of violence connected with a drug enterprise (see United States v. Ross, 33 F.3d 1507 (11th Cir. 1994)); or even evidence of pre-occupation with Adolph Hitler and the Third Reich to show organizational methods in creating a drug empire (see United States v. Lehder-Rivas, 955 F.2d 1510 (11th Cir. 1992)).

Clearly, if the Eleventh Circuit has approved the admissibility of murder, violence, and fascination with Adolph Hitler, expert testimony regarding Social Security benefits is hardly outweighed by danger of unfair prejudice.

## II. UNEXPLAINED WEALTH

It is undisputed that Smith currently lives in a home valued at $387,400.00. It is also undisputed that Smith has never reported any source of income to the Social Security Administration; nor has he reported any wages to the State of Alabama. Smith is charged with

conspiracy to distribute controlled substances. According to established law, these facts create a permissible inference that such wealth was derived from illicit activities.

Evidence of unexplained wealth can be highly probative if the wealth creates a reasonable inference of the defendant's involvement in a drug conspiracy or drug trafficking. *E.g.* United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir. 1991); United States v. Grandison, 783 F.2d 1152, 1156 (4th Cir. 1986). Importantly, the Eleventh Circuit has approved evidence of unexplained wealth in cases similar to the one at bar. For example, in United States v. Stubbs, 944 F.2d 828 (11th Cir. 1991), the government offered evidence that the defendant was unemployed and earned money selling marijuana. See Stubbs at 835-836. The defense objected under Rule 404(b). The trial court overruled the objection finding testimony of defendant's unexplained wealth as independently relevant to the issue of defendant's intent to distribute the narcotics. See id. at 836. The Eleventh Circuit held that the trial judge was well within his discretion in admitting the challenged testimony. See id.

Likewise, in United States v. Terzado-Madruga, 897 F.2d 1099 (11th Cir. 1990), the government, in a drug case, elicited evidence that the defendant had a large gold bracelet, thick gold chains, several rings, a luxury car, and claimed to be worth two or three million dollars. See Terzado-Madruga at 1120. On appeal, the Eleventh Circuit acknowledged that the presence of unexplained wealth can be relevant in drug cases. However, because the government failed to show the absence of legitimate sources of income, the probative value was minimal. See Id. Nevertheless, the Eleventh Circuit noted that if the government had shown "that appellant's expenditures exceeded his reported earnings by introducing into evidence his tax returns for the years covered by the indictment, [the government would then have created] a permissible

inference that such wealth was derived from illicit activities." See id. at 1120.

Finally, in United States v. Carrera, 295 F.3d 818 (7th Cir. 2001), the government admitted evidence that the defendant was arrested with $928 in cash and receipts for purchases totaling approximately $2500. See Carrera at 828. Defendant objected that the evidence was irrelevant and confusing. On appeal, the 7th Circuit upheld the evidence noting that "expensive trips, gambling, and other instances of free spending and high living may be pertinent to crimes involving a motive of enrichment." See Carrera at 829 *citing* United States v. Kwitek, 467 F.2d 1222, 1225 (7th Cir. 1972). Furthermore, according to the 7th Circuit, "evidence of unexplained wealth is admissible in drug cases as long as: (1) the evidence presented creates an inference that the defendant was involved in drug trafficking; (2) the unexplained wealth was acquired during the period in which the drug crime allegedly occurred and; (3) the government presents other evidence to support the charge including evidence that the income was not obtained through legitimate means." See Carrera at 829 *citing* United States v. Penny, 60 F.3d 1257, 1263 (7th Cir. 1995).

In the case at bar, Smith has provided copies of three checks totaling $151,300.96.[3] According to these records, Smith received $15,067.52 in 2000 from a life insurance policy, another $20,000.00 in 2004 from a life insurance policy, and $116,233.44 in 2005 from State Farm Insurance Company for a home that burned.[4] In addition to these checks, Smith has provided approximately 50 receipts showing the purchase of various building supplies.

---

[3] None of this income was reported to the Social Security Administration.

[4] According to State Farm Insurance, $72,827.23 was for the building; $34,969.01 was for contents; and $8,437.20 was for living expenses.

Assuming *arguendo* that Smith spent every penny of the $151,300.96 on nothing but building his home, over $200,000 of assessed value remains unaccounted for. Curiously, over $50,000.00 of Smith's own receipts reflect "cash" payments, including $9,237.81 cash for bricks and $2,823.32 cash for a mahogany door. Although perhaps not a cash payment, Smith's receipts reflect $4,500.00 for flooring that includes a marble foyer, marble hallway, marble livingroom, marble study, and marble kitchen. Importantly, Smith's evidence fails to account for any living expenses relative to his wife and two children, particularly expenses associated with his wife's purchase of a 2003 Mercedes E500W from Eagle Export Company priced at $45,416.10.

Applying established law to these facts, evidence of Smith's unexplained wealth is highly probative and admissible. Relying on Terzado-Madruga, *supra*, the government has shown that Smith's putative income (not including disability payments) since 2000 has totaled no more than $151,300.96. Yet, even crediting this amount, the government can prove assets exceeding $200,000.00. According to the law of this Circuit, by showing assets that exceed legitimate income, the government has created a permissible inference that Smith's wealth was derived from illicit activities. See Terzado-Madruga at 1119-1120. Likewise, relying on United States v. Carrera, the government has charged Smith with a drug conspiracy. The government can show: (1) that Smith has never reported any income to the Social Security Administration nor has he ever reported any wages to the State of Alabama, (2) that the drug conspiracy existed proximate with building the $387,400 home, and (3) that any "legitimate" income is dwarfed by other evidence of unexplained assets.

Applying established law to these facts, Smith's objection to unexplained wealth and expert testimony is due to be overruled. With expert testimony from the Social Security

Administration and certified documents from the Montgomery County Tax Assessor, the government will establish a permissible inference that Smith's wealth was derived from illicit activity. See Terzado-Madruga at 1119-1120.

## III. OTHER CRIMES EVIDENCE

Evidence of criminal activity other than the offense charged is not extrinsic evidence if it is inextricably intertwined with the evidence of the charged offense. See United States v. Collins, 779 F.2d 1520 (11th Cir. 1986); United States v. Foster, 889 F.2d 1049 (11th Cir. 1989). Furthermore, Rule 404(b) does not apply where the evidence concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime or is necessary to complete the story of the crime to the jury. United States v. Chandler, 996 F.2d 1073 (11th Cir. 1993); United States v. Williford, 764 F.2d 1493 (11th Cir. 1985).

In the instant case, evidence of Smith's unexplained assets and disability benefits are inextricably intertwined with evidence of his drug trafficking. Indeed, the government can prove, via the Social Security Administration, Smith's failure to report any legitimate income; yet, he owns a $387,400.00 home. According to the law of this Circuit, such evidence creates a permissible inference of illicit activity. Based upon the law of this Circuit, the government should be able to present this evidence without invoking Rule 404(b). In the alternative, the government incorporates by reference its Proffer of and Notice of Intent to Use 404(b) Evidence filed with this Honorable Court on March 18, 2008.

In conclusion, Smith alleges he is a victim of mistaken identity and has never trafficked in narcotics. He has been receiving disability benefits since 1992 and has never reported any income to the Social Security Administration. Yet, he owns a home valued at $387,400.00.

Although he may have received insurance proceeds, those funds are dwarfed by his remaining expenses. According to established law, once the government has established expenses that exceed legitimate income (proximate to the time of the charged offense) a permissible inference of illicit activity has been established. Therefore, Smith's objections are due to be overruled and the government's evidence should be admitted.

Respectfully submitted this the 2nd day of April, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Verne H. Speirs
VERNE H. SPEIRS
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7138 Fax
verne.speirs@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 3:07cr256-MHT |
| | ) | |
| HOWARD JAMES SMITH | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Susan James.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Verne H. Speirs
VERNE H. SPEIRS
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7138 Fax
verne.speirs@usdoj.gov

EXHIBIT A

| Doc.# | Date | Expense | | Vendor | Description |
|---|---|---|---|---|---|
| 6 | 06/13/05 | 25.00 | | Mtg. Co. Building Permit Dept. | Building Permit (cost estimate: $90,000) |
| 7 | 07/30/05 | 4,800.00 | | Raymond Craig | Plumbing |
| 10 | 08/04/05 | 8,800.00 | | Raymond Craig | Heat Pumps |
| 14 | 10/13/05 | 5,000.00 | cash | D&J Electrical | Electrical (&11,500.00 estimate) |
| 14 | 12/20/05 | 1,000.00 | cash | D&J Electrical | Electrical |
| 14 | 12/31/05 | 2,500.00 | cash | D&J Electrical | Electrical |
| 15 | 10/30/05 | 4,500.00 | | Stanley Roberson/Aaron Marsh | Marble & Ceramic Tile |
| 16 | 10/11/05 | 708.40 | | Lighting Fair, Inc. | Lighting |
| 17 | 12/15/05 | 2,823.32 | cash | Home Depot | Door |
| 18/19 | 12/28/05 | 9,237.81 | cash | Jenkins Brick Company (& Doc. 19) | Brick, etc. |
| 21 | 10/11/05 | 1,887.60 | cash | Surplus Warehouse | Shingles |
| 22 | 12/02/05 | 796.96 | cash | Surplus Warehouse | Windows |
| 23 | 07/27/05 | 1,247.86 | cash | Shelby Block & Builders | Lumber, masonry mix/sand |
| 24 | 10/06/05 | 956.10 | cash | 84 Lumber | |
| 25 | 08/23/05 | 2,945.22 | cash | 84 Lumber | |
| 26 | 08/15/05 | 5,526.16 | cash | 84 Lumber | |
| 27 | 08/15/05 | 53.67 | cash | 84 Lumber | etc. |
| 28 | 09/01/05 | 3,536.24 | cash | 84 Lumber | |
| 29 | 09/20/05 | 6,882.77 | cash | 84 Lumber | Lumber, etc. |
| 30 | 09/30/05 | 1,638.54 | cash | 84 Lumber | |
| 31 | 10/11/05 | 133.33 | cash | 84 Lumber | Seam tape, etc. |
| | | **64,998.98** | **SUBTOTAL - PAGE 1** | | |

| Doc.# | Date | Expense | | Vendor | Description |
|---|---|---|---|---|---|
| 32 | 10/12/05 | 205.90 | cash | 84 Lumber | Shingle vent |
| 33 | 11/15/05 | 1,954.19 | cash | 84 Lumber | |
| 34 | 11/25/05 | 142.51 | cash | 84 Lumber | Lumber, etc. |
| 35 | 11/30/05 | 105.82 | cash | 84 Lumber | Lumber |
| 36 | 12/05/05 | 1,120.82 | cash | 84 Lumber | |
| 37 | 12/07/05 | 27.46 | cash | 84 Lumber | |
| 38 | 12/20/05 | 61.18 | cash | 84 Lumber | |
| 39 | 02/13/06 | 1,370.93 | cash | 84 Lumber | Lumber |
| 40 | 02/17/06 | 36.49 | cash | 84 Lumber | |
| 41 | 03/07/06 | 14.79 | | 84 Lumber | |
| 42 | 03/07/06 | 48.03 | | 84 Lumber | |
| 43 | 03/09/06 | 40.90 | | 84 Lumber | |
| 44 | 03/11/06 | 52.83 | | 84 Lumber | |
| 46 | 01/12/06 | 2,000.00 | | Eagle Insulation Co. | Insulation |
| 48 | 04/24/06 | 2,300.00 | | Samuel Tuggle | materials for septic tank inst. (1,000.00 deposit) |
| 51 | 02/21/06 | 33.02 | cash | Jenkins Brick Co. | |
| 52 | 03/15/06 | 25,000.00 | | Zeigler Cabinet Shop | Cabinets, countertop (7,500.00 deposit) |
| 53 | | 2,600.00 | | Bibb Welding & Fabricating | Doors & Windows (1,000.00 deposit) |
| 53 | 04/24/06 | 1,458.33 | cash | Lighting Fair | |
| | | **38,573.20** | ***SUBTOTAL - PAGE 2*** | | |
| | | **64,998.98** | ***SUBTOTAL - PAGE 1*** | | |
| | | **103,572.18** | **GRAND TOTAL - EXPENSES** | | |

| Doc # | Date | Income | Source |
|---|---|---|---|
| 4 | 12/05/00 | 15,067.52 | Prudential Life Insurance- Insured: Mack A. Brown |
| 5 | 08/29/04 | 20,000.00 | Globe Life & Accident Insurance- Insured: Sammie L. Bell |
| 8 | 2005 & 2006 | 116,233.44 | State Farm Insurance re: fire $72,827.23 for building<br>$34,969.01 for contents<br>Date of Loss: 04/26/05 $ 8,437.20 for additional living expenses |
| | | **151,300.96** | **INCOME GRAND TOTAL** |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT B


3. 21. 2008